UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VENCELLA SMITH-THOMPSON | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 304 CV 01434 (SRU) |
| | : | |
| V. | : | |
| | : | PLAINTIFF'S MEMORANDUM IN |
| CRABTREE CADILLAC-OLDSMOBILE | : | OPPOSITION TO MOTION TO DISMISS |
| | : | |
| Defendant. | : | OCTOBER 7, 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

The Plaintiff Vencella Smith-Thompson, by her attorney, submits this

Memorandum in Opposition to Crabtree Cadillac-Oldsmobile, Inc.'s Motion to Dismiss

dated August 17, 2005.

I.    INTRODUCTION

The Plaintiff, Vencella Smith-Thompson, a consumer who purchased a 2001

Mazda 626 ("Mazda") from the Defendant car dealer, Crabtree Cadillac-Oldsmobile,

Inc., has sued the dealer for its use of a deceptive sales technique called a "spot

delivery" or a "yo-yo" sale.  While the Plaintiff does not contend that all spot deliveries

are illegal, nevertheless, the Plaintiff claims that under the facts of this case, as set

forth in the complaint, the manner in which the Defendant conducted this particular

spot delivery transaction and thereafter repossessed the Plaintiff's car violated the

Equal Credit Opportunity Act, 15 U.S.C.  §§1691, Connecticut's Unfair Trade Practices

Act, Conn. Gen. Statutes §42-110a et. seq., violated § C.G.S. sections 42a-9-609,

42a-9-611, 42a-9-612, 42a-9-613, 42a-9-614, 42a-9-615 (Connecticut's Uniform

Commercial Code, Article 9); violated sections 36a-785(b) and 36a-785(c) of the

Connecticut General Statutes (Connecticut's Retail Installment Act), and constituted a

fraudulent misrepresentations, a negligent misrepresentation, theft and a breach of

contract.


II.   <u>LEGAL STANDARD FOR RULING UPON MOTION TO DISMISS</u>

The Defendant has filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure claiming that the Plaintiff's complaint fails to state a

claim upon which relief can be granted.

The legal standard for ruling upon a motion to dismiss was recently summarized

by the United States District Court for the District of Connecticut in *Gonzalez v.* Lantz,

2005 WL 1711968 at *1 (D. Conn. 2005) where the Court stated:

> When considering a Rule 12(b) motion to dismiss, the court
> accepts as true all factual allegations in the complaint and draws
> inferences from these allegations in the light most favorable to the
> plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Flores v.*
> *Southern Peru Copper Corp.,* 343 F.3d 140, 143 (2d Cir.2003). Dismissal
> is inappropriate unless it appears beyond doubt that plaintiff can prove
> no set of facts in support of his claim that would entitle him to relief. *See*
> *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654 (1999); *Sweet*
> *v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). " '[T]he issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *York v. Association of Bar of City of New York,* 286 F.3d 122, 125 (2d Cir.) (quoting *Scheuer,* 416 U.S. at 236), *cert. denied,* 537 U.S. 1089 (2002). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)).

Similarly, the United States District Court for the District of Connecticut in the case of *Harris v. Lt. R. Meulemans, et al* 2005 WL 2338882 at *2 (D. Conn. 2005) has described the legal standard as follows:

> In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), *Allen v. Westpoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). To survive the motion, the plaintiff must set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), (quoting Fed.R.Civ.P. 8(a)(2)); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46 (footnote omitted), *see also Jahgory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)

III.   FACTS

The factual allegations of the complaint, which the Court must accept as true are that on March 20, 2004, the Plaintiff went to the Defendant's car dealership with Mr. Keith Benjamin to shop for a used car.  ¶5 [1] At the dealership, the Plaintiff spoke with a salesperson and was shown a 2001 Mazda 626 which she wanted to purchase. ¶ 6,7  In connection with the financing of a portion of the purchase price, the salesperson and another employee of the Defendant took an application for credit and indicated the need to check the Plaintiff's credit.  ¶9  As requested, the Plaintiff provided her date of birth, her social security number, a copy of her license and a pay stub.  ¶9  After several hours, an employee of the defendant who worked in the finance office congratulated the plaintiff and told her that the financing had been approved.  He described the terms of the sale and financing as being that the plaintiff trade in her 1998 Ford Contour and that the monthly payments would be $278.51 per month payable over five years.  These terms were acceptable to the plaintiff and she so advised the defendant.  ¶12  At that time, a bell was rung to signify to others in the showroom that a sale had been made and applause followed from other employees of the defendant dealership. ¶13.

During this same visit, the Plaintiff was with a Keith Benjamin who also was interested in purchasing a car for himself.  ¶6  The Defendant's salesperson suggested

_____

1 Paragraph references are to paragraphs of the plaintiff's complaint.

that Mr. Benjamin be a co-signer on the Plaintiff's financing and that the Plaintiff be a co-signer on Mr. Benjamin's financing.  ¶10

Later in the day on March 20, 2004, the Plaintiff and Mr. Benjamin went into the finance office of the defendant's dealership to sign purchase and financing documents for the Mazda and for Mr. Benjamin's car. ¶15  The Defendant prepared a purchase order for the Mazda and presented it to the Plaintiff and to Mr. Benjamin, both of whom signed the purchase order.  The purchase order also was signed by an authorized representative of the defendant. ¶16  The Defendant also presented the Plaintiff and Mr. Benjamin with a Retail Installment Contract which described the defendant as the "Creditor-Seller" and described the terms and conditions of the sale and financing of the 2001 Mazda 626.  ¶17.  Pursuant to the express terms of the Retail Installment Contract, the contract, as presented to the Plaintiff, represented an offer by the Defendant to sell the Mazda and to extend credit upon the terms stated therein.  ¶18 The Plaintiff and Mr. Benjamin accepted the offer by signing the Retail Installment Contract.  ¶19  The Plaintiff thereafter delivered her 1998 Ford Contour as her trade in and the Defendant delivered the Mazda to the Plaintiff.  The Plaintiff left with the reasonable belief that she had purchased the car with approved financing as set forth in the retail installment contract.  ¶21,22.  [2]  When the Defendant delivered the car to

2 While the plaintiff's complaint alleges that the trade in was delivered by the plaintiff on March 20th, the actual date of the delivery of the trade in and of the delivery of the car was March 22nd.  This correction will be noted in a future amendment to the complaint.  For purposes of the motion to dismiss, the actual date of delivery of the trade

the Plaintiff and took her trade in, there was no mention of any financing contingency.
¶23.

The retail installment contract called for the first monthly payment to be made on May 4, 2004.  ¶24  However, several weeks after March 20, 2004, an employee of the Defendant called Mr. Benjamin and told him that the defendant could not get financing for the Mazda and told Mr. Benjamin to tell the plaintiff that she would have to return the car to the defendant or they would call the police. ¶25  Upon receiving this information from Mr. Benjamin, the plaintiff contacted the defendant's employee directly and was told that the defendant could not get financing and that the plaintiff had to return the car.  ¶26  The plaintiff, knowing that (a) she had purchased the car on March 20, 2004, (b) that the retail installment contract contained no financing contingency but clearly showed that the creditor was the defendant, was reluctant to return the car, but under threat of arrest, thought that she had no choice.  ¶27 Thereafter, on May 2, 2004 the plaintiff returned the car to the defendant.  ¶28  At that time, the defendant's employees were unable to provide a satisfactory explanation as to where the plaintiff's trade in was and could not return the trade in.  ¶29  Several months later the plaintiff's trade in was returned but without the registration papers which have never been returned.  ¶30  In accepting the trade in, the plaintiff

---

in on March 22nd rather than March 20th is not material to the Court's ruling on the current motion.

specifically reserved all rights regarding claims arising from the defendant's actions.

¶31.


IV.    SPOT DELIVERIES AND YO-YO SALES

The plaintiff believes that it would be of assistance to the Court in ruling upon

the motion to dismiss to have an understanding of "spot deliveries" or "yo-yo" sales in

the context of used car sales.

In its brief, the defendant cites from the publication *Unfair and Deceptive Acts*

*and Practices* published by the National Consumer Law Center.  (See pp. 13-14 of

defendant's brief).  While the plaintiff recognizes this publication as an authoritative

source on the subject of spot deliveries, it should be noted that the citations included in

the defendant's brief presumes that a proper disclosure of the financing contingency

has been made to the consumer prior to the execution of any retail installment contract

and that such disclosure, if required by the applicable state's statute, is contained in

the retail installment contract itself.

In this case, where the allegations of the complaint are that no such disclosure

of a financing contingency was made to the consumer prior to the execution of the

retail installment contract and was not contained in the retail installment contract as

required by C.G.S. §36a-771(a) (discussed in section V (C) below), the more pertinent

discussion of spot deliveries can be found at section 5.4.5.1.1 of *Unfair and Deceptive*

7

*Acts and Practices* (National Consumer Law Center), pp. 382-383 wherein yo-yo sales

are explained as follows:

> Yo-yo transactions, also referred to as spot-delivery, take-back, MacArthur ("I shall return") or gimme-back, are one of the most widespread automobile dealer abuses today, applying to new and used car sales and automotive leases.  The yo-yo sale is standard operating procedure at many dealerships.
>     The consumer believes a vehicle's installment sale or lease is final and the dealer gives the consumer possession of the car "on the spot." The dealer later tells the consumer to return the car because financing has fallen through.  If the consumer does not return the vehicle or agree to rewrite the transaction on less favorable terms, the dealer repossess the vehicle, and in some extreme cases has the consumer arrested.
>     Yo-yo sales are one-sided.  The dealer insists that the consumer is bound by the agreement, but the dealer feels free to back out of the deal.  Although the true motivation for the dealer backing out can be one of any number of things, the stated justification usually is that the financing fell through.
>     Even if this stated justification is in fact the real one, it is still misleading in two ways.  First, it implies that the dealer is simply arranging financing with a third party lender.  In fact, the dealer is the originating creditor extending the installment loan to the consumer.  The dealer is then seeking to sell that installment sales contract to a lender. Second, in our credit market, the dealer can always find a buyer for the installment loan.  The only question is whether the dealer will have to sell the loan at a loss, will break even, or whether it can make a profit selling the loan.  Because dealers often make a profit selling the paper, another way to re-phrase the dealer's justification for canceling the sale is that the dealer could not sell the loan paper at a profit, and thus wants to back out of the deal.
>     In its most insidious form, a yo-yo is a premeditated sales tactic to squeeze more money out of the consumer by canceling the first contract in the hopes of reworking the terms.  The dealer decides it will have more leverage pretending to agree to one loan package, but then bringing the consumer back to the dealership a second, third or even fourth time, to keep re-negotiating the deal. The consumer must either return the vehicle or agree to substantially higher monthly payments, a

higher down payment, a longer term loan, or a different (worse) car.

The dealer's leverage on the typical consumer in this situation is crushing: after showing off the car to family and friends, consumers must either rewrite the deal or admit to their family and friends that their credit record is so bad the car had to be returned.  Moreover, dealers often pressure consumers into re-writing the deal by claiming that the trade-in has already been sold, or that the consumer will not get back any of the down payment of the deal dissolves.

Whether the yo-yo sale is part of a scheme from the beginning to bump up the financing costs, or the dealer just thinks better of the transaction after it communicates with lenders, the yo-yo sale is a classic one-sided transaction.  On the one hand, once the consumer drives the car off the lot, the consumer is locked into the sale.  The dealer does not want the consumer to think about the deal overnight---it wants the deal closed on the spot.  As described in § 5.4.4.1, *supra*, the dealer has just put a full court press on the consumer, perhaps sending in sales personnel in relays.  The last thing the dealer wants is for the consumer to go home and think things over, with the opportunity to back out of the deal.

On the other hand, the dealer wants to retain its options when the consumer drives off the lot with the car.  It does not want to be rushed into a hasty deal.  It wants time for its personnel to determine how much profit can really be made out of the deal selling the loan paper, and whether the lender will agree to the many add-on charges the dealer has packed into the deal.  The dealer may also want time to reflect on whether it can squeeze more out of the consumer, or, it not, whether it is better off selling the vehicle to someone else.

Usually, the dealer will want to hide this one-sided nature of the transaction.  It does not want consumers to think that they can get out of a deal just because the dealer can.  So the dealer will not disclose that the deal, from the dealer's point of view, is not final.

V.    <u>ARGUMENT</u>

A.      Accepting all well pleaded allegations as true and drawing all reasonable
inferences in favor of the plaintiff, the plaintiff has stated a claim under the
Equal Credit Opportunity Act upon which relief can be granted.

In the first count of the complaint, the plaintiff has alleged that the actions of the

defendant as set forth in the statement of facts violated the Equal Credit Opportunity

Act ("ECOA").  In particular, the plaintiff alleges that by approving the financing and

congratulating the plaintiff (Complaint ¶ 12), by presenting a purchase order which was

signed by the parties   (¶16), by having the plaintiff execute a retail installment contract

which described the defendant as the "Creditor-Seller" and the described the terms

and conditions of the sale and financing (¶17 and see Exhibit A to defendant's motion

to dismiss, p. 29), delivering the Mazda to the plaintiff (¶22) and taking her trade in

(¶21), the defendant became a creditor who extended credit for the purchase of the

Mazda (¶20).  When the defendant thereafter advised the plaintiff that it could not get

financing and that the car had to be returned or the Shelton police would be called

(¶25 – 28), the plaintiff has alleged the defendant thereby took adverse action against

the plaintiff as defined in U.S.C. section 1691(d)(6) of ECOA.  After taking such

adverse action, the plaintiff has alleged that the defendant violated 15 U.S.C.

§1691(d)(1) and (2) of ECOA by failing to provide the plaintiff with written notification of

the reasons for the adverse action and by failing to provide the plaintiff with written

notification of (a) the plaintiff's right to a statement of reasons within thirty days after

receipt by the creditor of a request made within sixty days after such notification and

(b) the identity of the person or office from which such statement may be obtained.

(¶34).  The plaintiff has alleged actual damages for which relief is sought under 15

U.S.C. §1691e(a).  The plaintiff also has alleged that the acts complained of were

done intentionally, purposefully and/or in reckless disregard of the rights of the plaintiff,

and has also sought statutory punitive damages are sough under 15 U.S.C.

§1691e(b).

      In its motion to dismiss, the defendant claims that the defendant was not a

"creditor" as defined in 15 U.S.C. §1691a(e), and therefore ECOA does not apply.  The

plaintiff disagrees. The statutory definition of "creditor" in this section reads as follows:

"The term "creditor" means any person who regularly extends, renews, or continues

credit; any person who regularly arranges for the extension, renewal, or continuation of

credit; or any assignee of an original creditor who participates in the decision to extent,

renew, or continue credit."  Accepting the plaintiff's allegations as true and drawing

reasonable inferences from those allegations in ruling upon the motion to dismiss, the

Court should find that the plaintiff has sufficiently alleged that the defendant was a

"creditor" for purposes of ECOA.  The plaintiff gave its credit application to the

defendant, the defendant advised the plaintiff that she was approved for credit, and,

most importantly, the defendant then prepared a retail installment contract, Exhibit A

attached to defendant's memorandum in support of its motion to dismiss, at page 29,

which, in the top right hand corner, in a box labeled "Creditor-Seller", the defendant

named itself as the "Creditor-Seller".  In addition, in paragraph #2 of the same retail

installment contract, the contract states "You, the Buyer (and Co-Buyer, if any) may

buy the vehicle described below for cash or on credit.  By signing below, you choose to

buy the vehicle on credit under the terms on the front and back of this Contract and

are individually liable (jointly and severally if both a Buyer and Co-Buyer sign below)for

any amount due in the Contract, **"we", "us", and our mean the creditor named**

**above** [i.e. Crabtree] and, after assignment, the creditor's assignee, Chase Manhattan

Bank, USA, N.A. and/or any other assignee".

In its brief, the defendant cites at length from the decision in *Nevarez v.*

*O'Connor Chevrolet, Inc.* 303 F. Sup. 2d 927 (N.D. Il 2004) which also involved a spot

delivery where the retail installment contract contained the dealer's name and where

the dealer moved for summary judgment, claiming it was not a "creditor" under ECOA

for purposes of the requirements of delivering written notice of adverse action.  While

Crabtree's counsel cites in detail the Court's discussion the Federal Reserve Board

regulations relating to the ECOA definition of "creditor" wherein a distinction is made

between a "Referring Creditor" and a "Participating Creditor", counsel fails to note that

in *Nevarez*, while the Court accepted the FRB distinction between Referring and

Participating Creditors, the Court nevertheless **denied** the defendant dealer's motion

for summary judgment on the ECOA claim.  In doing so, the Court noted that there

12

was evidence that the dealer did more than just refer the customer's application to potential third party lenders.  The evidence which the Court pointed to, similar to the evidence in this case, was the contract between the dealer and the customer which designated the dealer as the "Seller" and the customer as the "Buyer" and which stated "Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon *for the deferred payment price and on the terms set forth in this contract.*  Buyer acknowledges delivery and acceptance of said motor vehicle in good condition … This contract shall be *binding* upon and inure to the benefit of the parties, their heirs, personal representatives, successor and assigns."  *Id.* at 939.  The Court noted that "The terms of the financing arrangement are set forth in the contract … and nowhere in the contract does it indicate than any entity other than O'Conner [the dealer] is the creditor for purposes of the transaction."  *Id. at 939.*  The Court then states "The terms of the May 5, 2001 contract are not set out as an "application" for credit; those terms appear to be a credit contract that O'Connor could have enforced against the Plaintiffs." *Id. at 940.*  The Court then concludes "Defendants have not demonstrated that there is no genuine issue of fact as to whether O'Connor was functioning as a "Participating Creditor" … .  For that reason, summary judgment on Count II is denied." *Id.* at 941.

In the present case, the retail installment contract, Exhibit A to defendant's motion, contains even clearer language than the contract in *Nevarez* in that the

13

defendant Crabtree is not only described as the "Seller" but also is described as the "Creditor".  Accordingly, the Plaintiff asks the Court to deny the defendant's motion to dismiss the ECOA claim.

       B.     In ruling upon the motion to dismiss, the Court should consider only facts set forth in the plaintiff's complaint and inferences reasonably inferred from those facts and should not consider the Temporary Possession Agreement which is not contained in the complaint and whose existence cannot be reasonably inferred from the facts alleged.

The defendant has asked this Court to consider facts not set forth in the complaint.  Specifically, the defendant has asked the Court to consider the terms of a Temporary Possession Agreement (Exhibit B to defendant's memorandum) to support its claim that the plaintiff's complaint fails to state a claim upon which relief may be granted.

The reason why the plaintiff did not allege facts concerning this Temporary Possession Agreement is because the plaintiff was never given a copy of the Agreement and therefore did not know of its existence until it was produced by the defendant in discovery.  In addition, drawing reasonable inferences from the facts alleged, it can be inferred that the plaintiff did not know about this document because it was never explained to her, because it was slipped past the plaintiff so as not to draw her attention to it, and because it was incomplete as to essential terms in that it lacked

14

any reference to the Mazda which the plaintiff purchased on March 20, 2004. Although the form contained spaces to be filled in for the invoice no, the date of the invoice and the particular vehicle to which it was to apply, all of these spaces were left blank.

If the Court follows the legal standards for ruling upon a motion to dismiss as discussed in Section II above, it should not consider the Temporary Possession Agreement in ruling on the Motion to Dismiss.  Without this document, the defendant's motion to dismiss is baseless and must be denied.

On the other hand, should the Court not exclude this document, then the Court must follow the requirements of Fed. R. Civ. Proc. R. 12(b)(6) which provides "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

      C.     The Temporary Possession of Vehicle Pending Credit Approval is not enforceable against the Plaintiff because it was not contained in the Retail Installment Contract as required by Connecticut General Statutes §36a-771 and because it was never given to the plaintiff.

15

Should the Court choose not to exclude the Temporary Possession Agreement for purposes of ruling upon the Motion to Dismiss, the plaintiff nevertheless would ask the Court to find that the terms of this document are not enforceable against the plaintiff because they were not contained within in the Retail Installment Contract as required by Connecticut General Statutes §36a-771.  If the Court agrees, then the defendant's motion to dismiss must be denied.

In Connecticut, legislation exists establishing the rights and responsibilities of parties in retail installment sales financing transactions, of which the transaction in this case is one.  This legislation is contained in the Retail Installment Sales Financing Act ("RISFA"), C.G.S. §§36a-770 – 36a-788.

The general contract requirements for every retail installment contract are set forth in C.G.S. §36a-771(a) which reads as follows:

> Every retail installment contract shall be in writing, **shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer**. No installment contract shall be signed by the retail buyer when such contract contains blank spaces to be filled in except that this provision shall not apply to serial number or other identifying marks which are not available for description at the time of execution of such contract. **The retail seller shall deliver to the retail buyer a true and complete executed copy of the retail installment contract at the time the retail buyer signs such contract.**
> **(Emphasis Added)**

16

By requiring that a retail installment contract "contain all the agreements of the parties" and that it be "completed as to all essential provisions prior to the signing of the contract by the retail buyer", RISFA prohibits side agreements such as the Temporary Possession Agreement used by the defendant, which seeks to impose terms not otherwise contained in the Retail Installment Contract.  If the defendant wanted to make the Retail Installment Contract contingent upon the dealership obtaining credit approval from a bank or lending institution, it could have done so by including a clear and specific condition precedent or a condition subsequent in the Retail Installment Contract.  However, having failed to include such a condition precedent or subsequent in the Retail Installment Contract, it could not do so in a separate agreement based upon the clear language of C.G.S. §36a-771(a).

An examination of the retail installment contract, Exhibit A to defendant's memorandum of decision shows clearly that not only did the contract fail to include a financing contingency, but, to the contrary, it clearly showed that financing had been granted by the defendant Crabtree who was named as the "Creditor-Seller".  (See discussion at page 12 supra.)

While the defendant relies heavily on the ruling in the case of *Dauti v Hartford Auto Plaza, Ltd. d/ba/ Hartford Toyota Superstore* 213 F. Sup. 2d 116 (D. Conn. 2002) to support its claim that the Temporary Possession Agreement is enforceable in this

17

case, the facts of *Dauti* are easily distinguishable from those in the plaintiff's case. First, and most importantly, the *Dauti* case did not arise under RISFA but rather arose in a consumer lease transaction.  Therefore, the requirements of C.G.S. §36a-771(a) that the retail installment contract "shall contain all the agreements of the parties" did not apply in *Dauti*.  In addition, *Dauti* did not involve a motion to dismiss under Fed. Rul. Civ. Proc. Rule 12(b)(6).  Rather, it was a decision rendered after a full trial in which the Court found that the leasing company had fully and properly disclosed to the consumer that the leasing transaction was contingent upon approval from a third party financing company.

In the plaintiff's case, accepting all well pleaded allegations as true, the Court must assume that "the defendant who worked in the defendant's finance office congratulated the plaintiff and told her that he financing had been approved" (Complaint ¶12) before the plaintiff signed the retail installment contract, and that "when the defendant delivered the car to the plaintiff and took her trade in, there was no mention of any financing contingency." (Complaint ¶23).

While the plaintiff does not dispute, as the *Dauti* court held, that a lease (or a retail installment contract) can have a condition precedent or subsequent making the lease (or contract) conditioned upon subsequent financing approval, under the facts of this case, and in light of the requirements of C.G.S. §36a-771(a), the Court in this case, in ruling upon the defendant's motion to dismiss, cannot find that the defendant

18

properly disclosed such a condition to the plaintiff or that the plaintiff agreed to such a

condition.

For the reasons noted above, the plaintiff asks the Court to find that the

Temporary Possession Agreement is not enforceable against the plaintiff and the

plaintiff's complaint states a valid cause of action.

 

      D.     The Temporary Possession of Vehicle Pending Credit Approval is not
enforceable against the Plaintiff because it failed to contain essential
terms.

Should the Court not exclude the Temporary Possession Agreement for the

reasons set forth in subsections B and C above, the plaintiff would ask that the Court

find the agreement to be unenforceable against the plaintiff in that it failed to contain

essential terms.

In *Suffield Development Associates, Ltd. Partnership v. Society for* Savings

243, Conn. 832, 843 (1998), the Connecticut Supreme Court has held

> Under established principles of contract law, "an agreement 'must be
> definite and certain as to its terms and requirements.' " <u>Presidential
> Capital Corp. v. Reale, 231 Conn. 500, 506, 652 A.2d 489 (1994)</u>; 1
> <u>Restatement (Second), Contracts § 33</u>, comment (e), p. 94 (1981).

Upon examining the Temporary Possession Agreement, it is clear that the three

blanks which call for an invoice number, a contract date and an identification of the

vehicle which is the subject of the Temporary Possession Agreement are all left blank.

Certainly these are essential terms, particularly because on the date in question two separate purchase contracts were entered into, one between Crabtree and Ms. Smith-Thompson and Mr. Benjamin for a Mazda and a second between Crabtree and Ms. Smith-Thompson and Mr. Benjamin for a Dodge Caravan.  Lacking these essential terms, the Temporary Possession Agreement cannot be enforced.

       E.  The remaining state court counts of the Plaintiff's complaint properly allege causes of action and should not be dismissed.

In the Second Count of her complaint, the Plaintiff alleged a violation of several sections Connecticut's Revised UCC Article 9 which deals with repossession of collateral.  The defendant argues that "no credit was extended by the plaintiff" and therefore the defendant the statutory sections relied upon would not apply.  For the same reasons described in the discussions of the ECOA claim above, the plaintiff claims that the defendant was a creditor and credit was extended as evidenced by the Retail Installment Contract and the actions of the parties alleged in the complaint. Accordingly, the motion to dismiss as to count two should be denied.

In the Third Count of her complaint, the Plaintiff has alleged violations of the Retail Installment Sales Financing Act, and in particular those provisions which deal with pre and post repossession requirements.  As noted above, the defendant was a creditor and the allegation that the defendant demanded that the vehicle be returned

under threat of contacting the police is sufficient to allege a repossession, thereby triggering the requirements of RISFA.  *See Jacobs v. Healy Ford-Subaru, Inc.* 231 *Conn.* 707*, 715 (1995)* wherein the trial referee had found that a voluntary surrender could still constitute a repossession.

In the Fourth Count, the Plaintiff has alleged a breach of contract.  Contrary to the defendant's assertions, the purchase order and retail installment contract, which was required to contain all of the terms of the parties agreement, contained no financing contingency.  These contracts were breached, entitling the plaintiff to damages.

In the Fifth Count, the Plaintiff has alleged a violation of Connecticut's Unfair Trade Practices Act.  The facts alleged in the complaint sufficient set forth actions by the defendant which offend public policy, were unscrupulous and which cause substantial injury to consumers.  In addition the plaintiff suffered an ascertainable loss in that she lost the car which she had purchased from the defendant.  Accordingly, the motion to dismiss as to this count should be denied.

In the Sixth Count and Seventh, the Plaintiff has alleged a negligent and fraudulent misrepresentations.  Again, the defendant relies upon the temporary possession agreement, the terms of which were not contained in the retail installment contract, a copy of which was not given to the plaintiff, and which was unenforceable because it was left with blanks were essential terms were called for.  The facts alleged

21

in the complaint sufficiently allege that the defendant supplied false information to the plaintiff upon which she justifiably relied and that she suffered damages as a result. The motion to dismiss as to these counts should be denied.

In the Eighth Count, the plaintiff has alleged theft.  For the reasons noted above, the Court should not consider the temporary possession agreement in ruling on the motion to dismiss.  Upon the execution of the purchase order and retail installment contract and the delivery of possession of the Mazda to the plaintiff, she became the owner of those vehicles.  While the defendant may have failed to properly handle the transfer of title to the vehicle as required by the state titling statute, the defendant should not be entitled to use failure on their part to claim that ownership had not passed to the plaintiff.  In demanding the return of the vehicle under threat of police action, the defendant stole the plaintiff's property and the plaintiff is entitled to pursue her claim under C.G.S. section 52-564.

VI.    CONCLUSION

The defendant's motion to dismiss the plaintiff's complain should be denied by the Court.  The manner in which the defendant handled the spot delivery of the Mazda 626 to the plaintiff Vencella Smith-Thompson was improper under the statutes and common law described above.  By her allegations and the reasonable inferences to be drawn therefrom, the plaintiff has sufficiently stated eight causes of action upon which she should be entitled to proceed in this action.

Respectfully Submitted

Plaintiff Vencella Smith-Thompson

By /s/ Gary P. Sklaver_____
 Gary P. Sklaver, Esq.
 Fed. Bar No. ct07327
Licari & Walsh, LLC
105 Court Street,
 New Haven, Connecticut 06510
Tel: 203 752-1450; Fax 203 752-1401;
email gsklaver@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2005, a copy of the foregoing memorandum was filed electronically.  Notice of this filing will be sent by email to all parties noted

below by operation of the Court's electronic filing system.  Parties may access this

filing through the Court's system.

Kevin Greene, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103-4303
Attorney for Defendant

Jeffrey Nagle, Esq.
Ryan, Ryan Johnson and Deluca
80 4th St, P.O. Box 3057
Stamford, Connecticut 06905
Attorney for Defendant

William Giacomo, Esq.
Giacomo, Gallo, Feinstein & Naishtut
28 South View Dr., PO Box 4845
Greenwich, CT 06830

By /s/ Gary P. Sklaver
 Gary P. Sklaver, Esq.
 Fed. Bar No. ct07327
Licari & Walsh, LLC
105 Court Street,
 New Haven, Connecticut 06510
Tel: 203 752-1450; Fax 203 752-1401;

email gsklaver@yahoo.com